Please all rise. Your Ede, your Ede is honorable appellate court for the second judicial district is now back in session. The Honorable Julian Bridges is diagnosed. You may be seated. Good morning. Good morning. Both parties ready to proceed. Good morning and may it please the court. Irena Miller appeals from judgments of the circuit court that negated her former husband's duty to pay maintenance. The actions in this case were filed after the ex-husband ceased paying maintenance of any nature without any prior court authorization. We have presented arguments on appeal that entail the declaratory judgment actions in this case as well as our alternative argument. Before I address those, however, I would like to identify what we would submit is the core of the issue in this case or the key to understanding this case. And that is our claim that Lorena is entitled to a reinstatement of maintenance. This argument, this part of our arguments is found in section 2A of our brief. But is it reinstatement of the prior order of $3,000 a month? Of $3,000 a month? Yes, based on our theory that the prior judgment of $3,000 a month is the operative judgment. Ms. Perko, what he is claiming now, the husband is claiming now, these parties are no stranger to the appellate court. What he is claiming now, did he raise that at the appellate court? I'm sorry, did he? Did the husband raise the issue at the appellate court? Well, now I don't have to pay because nothing from nothing leaves nothing, if you will. No, he did not raise that. He did not effectively raise that issue. He cites, I believe at the very end of his answer brief, as I recall, a stab at saying that proper calculation of maintenance in this case would be nil or zero. But, however, that, assuming that was a claim, it was not a developed claim, I didn't file a response to it. The court didn't issue a ruling on it. So insofar as the defendant claims that he raised such a claim, his attempt was unsuccessful. There's not citation to facts in the record. There's not citation to precedent. So it would be our position that the defendant, excuse me, the ex-husband did not effectively raise a claim that he is attempting now to raise on appeal. And we do, in fact, claim that he has forfeited that type of a claim because it's never, it never has been developed. The problem as we see it, or the key problem, which I was suggesting at the beginning of my remarks, is that as of April the 27th, 2020, the wife had a right to receive maintenance from the husband. This date of April 27th, 2020, is the date of this Court's judgment in the last review. The second appeal? The year 2020. Right. But that was the second. His in re marriage of Miller's second appeal. Correct. That was at least the second appeal before the current appeal. There had been a prior appeal that did, in fact, involve an alternative claim for termination or modification of maintenance based on financial considerations. That claim was denied after the Court's ruling on a remand finding that it had not, that the defendant had failed to prove cohabitation. And the case was remanded after that finding. And after that remand, there were orders entered denying the remaining issues involved in that case, which included the claim for modification or termination of maintenance. So as of this Court's opinion in the second appeal, and the second appeal essentially is a claim that the defendant no longer had a duty to pay maintenance. And excuse me for calling him the defendant, but the respondent or the ex-husband in this case, that he did not, he was entitled to a modification or termination of maintenance because of his loss of employment and the fact that he would no longer have income from that employment. As of April the 27th, 2020, there was a right to receive maintenance. Now, the question becomes, what happened from that day after this Court rejected the husband's last appeal? What happened in that period of the decision until now that causes a deprivation of the right to maintenance? So your question is, who told him? What court? Was it the appellate court? Was it the trial court? Who told him to stop paying maintenance? Well, absolutely no court said that. And the law is quite clear, and we have at least one case cited in our brief that a litigant or an individual is not entitled to act contrary to a court order for support. So there he was not entitled to do this. The fact that he did it forced Lorena to file the – to start the current proceedings. And in order to enforce her existing judgment, this manipulation of the system, whether it was intentional or whether it was unintentional, nevertheless, caused a tremendous dissonance, let's say, in the analysis of the trial court and in the position of Lorena being forced to assume the position of carrying the burden of proof. When there was no burden of proof that rightfully belonged to her, this is, as the ex-husband's counsel's brief points out, this is a statutory action at base. And this – that statutory action requires a modification of maintenance to be brought in an action. This did not happen in this case, and yet Lorena lost her right to maintenance. Counsel, let me ask you this. I apologize. You argue that res judicata bars him getting relief in this case. How do you – do you close the door on someone who wants to challenge the maintenance as he did in this case? For example, he decided that – he went back to the 2008 order and said, I'm to pay the 21-some-odd percent of my salary. And now that I'm unemployed, it's zero, and he decided to stop paying the maintenance. Why would he be barred under res judicata from bringing that claim before this court in this new appeal? He's barred because he could have brought it in the prior appeal. Res judicata applies not only to matters that are actually litigated, but also to matters that could have been litigated in the prior proceeding. And the husband had the complete ability to litigate the question of the application of the original judgment of dissolution of marriage to these proceedings. Everything that is argued in the current proceedings was known at the time of the prior proceedings. So your position is in Miller 2, when this court reversed it, he could have raised that claim there, and he did not. Correct. He could have raised it in those proceedings, and he did not. He could have also filed a motion for saying, I had a substantial change in circumstances, and I don't think I have to pay based upon this section of the code, or this section of the marital settlement agreement. Correct? Well, I mean, theoretically, there could have been change in circumstances from April of 2020 until today. And a change in circumstances always, under the Marriage and Dissolution of Marriage Act, a change in circumstances would always give rise to a petition for modification. Right. Allows the court to review it. Absolutely. But he didn't ask for that in this case. He just decided he was not going to pay. Correct. He has not. He did not file any attempt to get a review. So then I'm clear. Your position is he could always. Restitution would not bar him from raising a substantial change, as long as it's not one that he could have raised before. And in this case, your position is he could have raised the issue of no longer being employed and did not. Correct, Your Honor. So it's our position that race judicata underlies the right to receive maintenance in this case. And we, the court and I, have just had a discussion that Justice Bridges has just characterized my position, and I believe that characterization to be accurate. The husband's only response to this petition for reinstatement of maintenance, to our argument for reinstatement of maintenance, seems to be that the court lost The argument cannot be properly raised in a statutory action. These arguments we submit are without merit. In the first place, the arguments are forfeited. They never were raised before. But next, a court that is properly constituted has jurisdiction, and jurisdiction is, exists, and it's not lost or absent in certain kinds of cases. But in this case, the court never set aside this argument, never addressed it before Jeffrey decided on his own that he wasn't going to follow it. Correct. This argument had never been presented to a court, according to the record, the entire record of this case. I mean, there's no indication that this argument has been properly presented to a court and ruled upon. But your position, it's never been ruled upon, but it could have been had it been raised earlier. Correct. It could have been raised in Miller 2. Or subsequent to. I mean, it could have been brought back as a motion to reconsider, you know, to revisit the, what am I trying to say, the support. He never did that. Well, if there were a change in circumstances, it could. If there was an allegation of a change in circumstances from Miller 2 to whenever the proceeding started, yes, that would be cognizable. But the important, an additional important point, I think, here, has to do with the defendant's claim that a court in a statutory action does not have equitable powers. And we cite a number of authorities that lead to the inevitable conclusion and that outright say that that is not correct. My time is up. And unless the Court has a question, I'll save other remarks until we try. Thank you, Your Honor. Does any Justice have any additional questions? I do not have any additional questions. Counsel, thank you. At the conclusion of the Appley's argument, you will have an opportunity for rebuttal. Thank you, Your Honor. Mr. Daly. Good morning, Justices. May it please the Court. The parties agreed on the consequences of the previous appellate court mandate in Miller 2. Petitioner filed a motion for declaratory judgment which stated that the decision in Miller 2 restored the parties to the status quo that existed on May 16, 2019. Respondent admitted that allegation in his response to the petitioner's motion for declaratory judgment. Respondent filed his own motion for declaratory judgment, asserting that the status quo ante as of May 16, 2019, was the January 8, 2008 supplemental judgment, which then referenced back to the original February 7, 2007 judgment. That's where the parties stood after the mandate of this Court issued in Miller 2. Counsel, let me interrupt you there. Did Miller 2 mandate essentially restore the $3,000 maintenance? I do not agree with that assertion, and I think the law and the facts support our position. What was before the Court in Miller 2 was Respondent's petition to terminate maintenance. As the law clearly states, when presented with a petition to terminate maintenance, the trial court can deny the petition, the trial court can grant the petition, or the trial court can modify maintenance, which in this case the trial court had done, and set maintenance at $1,300 a month. So this suggestion that Mr. Miller at some point could have raised the issue of the conflict between the January 8, 2008 order and the March 2011 order doesn't really make sense, because the trial court set his maintenance at $1,300 a month, which is less than the $3,000 in the March 2011 order. As a practical matter, no one ever in the trial court or in the appellate court on Miller 2 ever made mention of the March 2011 uniform order of support, which makes sense because it's an administrative order that's derivative of some other order. So it's derivative of the February 7, 2007 judgment and the January 8, 2008 supplemental judgment order. These uniform orders of support do not have any substantive basis on their own. They have to relate back to an underlying order of the court. They're purely administrative so employers know how much to withhold. So I hate to interrupt you, but I'm going to. So you're saying that he was told to pay $1,300 a month, correct? By the trial court, yes. Correct. So then he quit paying. No. This Court entered a mandate that reversed that order. But wasn't the reversal based on the fact that your client had failed to prove a substantial change in circumstance? Correct. Yes. And then if that's the case, the prior order goes into effect, correct? Which is the January 8, 2008 order. Paying how much? No. Okay. To pay 21.14 percent of his income. Right. Respondent clearly raised in his ñ it's been referenced many times by Petitioner about husband's appeal. Husband was the appellee in Miller 2, so he wasn't making any claim. He was willing to accept the $1,300 a month. So then my question to you is then why did he pay nothing? Well, we raised ñ Respondent raised before this Court in Miller 2 in his brief, cited to the January 8, 2008 order, and said we keep ñ the argument we made in the brief was we keep focusing on whether or not his loss of employment constituted a substantial change in circumstances. I asked rhetorically in the brief, what is it that Petitioner is asking for? Because if it's determined that there was no substantial change in circumstances, we're left with the January 8, 2008 order, which says 21.14 percent of his income from employment. So maintenance would be set at zero. That was your interpretation of the orders in the prior orders. That's what I argued in Respondent's brief. Right. And that was your interpretation of them. Correct. And again, I ñ Respondent in his appellee's brief in Miller 2 did not cite to the March 2011 order, because Respondent has never, ever, and to this day, considered that order to be substantive in any way. It's completely derivative of the January 8, 2008 order, which is the order that he's required to comply with. In appellee's reply brief in Miller 2, there was no citation to the March 2011 order. The argument was this ñ that Petitioner made in Miller 2 in her reply brief was that this court could somehow just establish a maintenance figure. So Petitioner didn't dispute that under the formula in the January 8, 2008 order, maintenance would be zero, because we asked rhetorically in appellee's brief, what would be the result if the relief they're requesting is granted, which is that Jeffrey Miller, Petitioner terminating maintenance, be denied? Well, that's ñ again, coming back to my question, why did he just decide to stop paying? I know what you're saying. We decided ñ he decided to stop paying because we interpreted the set ñ the agreement to say is based upon money he gets from employment. Now, as a lawyer, I think you might think, or whomever the trial court lawyer was, that's a brilliant argument. That's brilliant. Tee hee hee, let's go along with that order. Wouldn't it make sense to go to the trial court and say this is how we interpret this, and therefore we don't think we have to pay any maintenance, as opposed to just going cold turkey and quit paying the ex-wife her money? I think the ñ Mr. Miller didn't decide anything. Well, somebody decided. Mr. Miller came ñ the mandate of this Court issued, his petition to terminate maintenance was denied. That restored the parties to the status quo ante, which was comply with the January 8, 2008 order. Mr. Miller did file his own motion for declaratory judgment within a couple of weeks of Petitioner filing her motion for declaratory judgment. It wasn't until Petitioner filed her motion for declaratory judgment that Respondent was ever even aware that this issue of the March 2011 order could impact this case at all. So the question was how much under the January 8, 2008 order, after this Court's mandate issued, what else could he calculate to pay other than 21.14 percent of his income from employment? So if you had that issue and that question, isn't that a question if you didn't understand the Court's order? Couldn't you ask for clarification of the Court's order? But we did understand the Court's order. Okay. It denied the instructions to the trial court. The trial court has reversed. So the order setting maintenance at $1,300 was reversed. Petitioner has admitted in her motion of declaratory judgment that that restored the parties to the status quo ante. The issue here about Respondent deciding to do something, granted, it's a very unique and novel argument, but it was Petitioner that was in the trick bag as to what to do after the Court's mandate issued, because she couldn't really proceed. She did file a petition for rule of show cause. But until there was a determination of whether or not any amount was due under the existing order, there was the what – and again, if Respondent had been aware that Petitioner's going to take the position that the March 2011 order is substantive and sets his obligation at $3,000, or if any court had referenced that March 2011 order and said, well, Petitioner's – or Respondent still has to pay the $3,000 a month under this March 2011 order, that issue, that order was never referenced ever until Petitioner filed her motion for declaratory judgment. Respondent immediately filed his own motion for declaratory judgment saying, wait a second, that's not the operative order. The operative order is the January 8, 2008 order. So we did raise it with the trial court as soon – within three weeks, I believe, of Petitioner filing her motion for declaratory judgment, which was the first time there was any indication that this March 2011 order was being considered substantive. Respondent filed his own motion for declaratory judgment saying the January 8, 2008 order controls, and also the original judgment from February 7, 2007. The trial court granted Respondent's motion for declaratory judgment. So he – so it turns out, at the trial court level anyway, when he stopped paying maintenance, the trial court agreed he was complying with the existing order. Mr. Miller still has an obligation to pay maintenance. Petitioner still has a right to receive maintenance. It's just the operative maintenance order at this time sets maintenance at zero because it's a formula dependent on his income from employment. With regards to this March 2011 order, I mean, we're in the trenches dealing with these uniform orders of support and orders withholding all the time. There's not a whole lot of case law in it. But I've cited to the cases that have dealt with qualified domestic relations orders, and they're really exactly on point because it's the same situation. You have a judgment for dissolution of marriage and maybe a marital settlement agreement or a judgment after trial, and it will divide retirement assets. But the language that's used in the judgment or the marital settlement agreement is not sufficient to trigger a plan administrator to actually divide those benefits. So you have to do a qualified domestic relations order. And I cited to Platt, Allen, and the David cases at page 19 of our brief, all three of those cases say the judgment for dissolution of marriage controls. So if there's any discrepancy between what's in the qualified domestic relations order and what's in the judgment for dissolution of marriage, the quadro has to be amended. It's not an amendment of the judgment. Same thing here. If to the extent the administrative order of support entered on March 2011 could be considered as an order that modified maintenance, it's impossible under the law. There was no petition to modify filed. The motion that was filed that date specifically references in accordance with the judgment, derivative, in accordance with. It wasn't a verified pleading. There was no hearing, and it was simply the administrative order was entered. The original judgment specifically referenced that maintenance to be, except the formula at that time, the 40, there was a year of post-trial motions, so you have to read both the judgment and the supplemental judgment. But basically, initially, Judge Spence ordered maintenance at 44 percent, yeah, 44 percent, I believe, of Mr. Miller's. Well, at first he said it in net, then he changed it to gross, but he put the formula, and then he said to be paid at the rate of $6,000 a month with an annual true up. After four years, the maintenance obligation was basically cut in half, so at exactly the four-year mark is when this uniform order for support was entered that set it at $3,000. It's basically just now it's to be paid at the rate of $3,000 per month plus the true up, because now we're dealing with 21.14 percent instead of 42 percent. So basically, I don't think burden of proof, the burden was on petitioner to file the petition to modify because the January 8, 2008 order reduced her maintenance to zero. So that's a substantial change in circumstance for her because she had been receiving, you know, whatever the annual amount was, like $100,000 a year, and now under the January 8, 2008 order, it's zero. But then we have the trial, and the court concludes both these people are about the same age, neither one of them is working, Mr. Miller has $2.6 million net worth, Lorena Miller has $1.2 million net worth. And for all the factors, the trial court said, well, there's a lot of reasons why there's a disparity in their net worth, none of which falls on Mr. Miller. Most of it falls on Lorena Miller as to what she's done, especially in the first four years when she was receiving more than half the cash flow and didn't make any plan for working or saving or anything. So then when the maintenance cut in half, all of a sudden she's having cash flow problems, and for the first time, Mr. Miller is actually able to resume a lifestyle that resembled what they had during the marriage. But the ultimate issue here is, administratively, what the effect, and substantively, what's the effect of the March 2011 order? But this idea that when it was never raised by Petitioner until her motion for declaratory judgment to suggest that Mr. Miller could have raised it, but... So the gist of your position here is that Miller, too, never changed the core order, the 2008 order, that established maintenance at a certain percent. And then all your client did was, when Miller, too, was issued, went back to the court after Petitioner filed the declaratory judgment to seek clarification that 21 percent of nothing is nothing. Correct. I have no additional questions in the interest of time. No, thank you. Thank you very much. Counsel, you may proceed with your rebuttal. Thank you, Your Honor. With reference to the 2011 order, which counsel refers to as March 2011, I believe it's February 2011, but that's immaterial. It's just that it is the 2011 order. We believe that that order in and of itself was sufficient to, the uniform order for support in and of itself was sufficient for modification of a judgment, but that's not what happened in this case. What happened in this case is that there was an agreement of the parties. Pursuant to the agreement of the parties, a motion was filed asking the court to approve a modification of judgment. And thereafter, the court entered not only a uniform order for support, but also what's generally referred to as a long-form order. So these were orders effectuating an agreement between the parties. The long-form order on its face has written in writing that it is an agreed order. However, there are several cases that can be found that state the rule that there is no special procedure that is necessary to effectuate an agreed order. And that is the situation in this case. The motions for entry of the agreed order were brief. They merely stated that there was an agreement between the party and they sought the modification of support. The – there are two different points in reference to this. The defendant's actual motion for entry of the order was labeled, a motion for modification of support. Then the court's order authorizes and says that the motion to file an amended order of support is – excuse me, motion to file a modified order of support that leave is granted to file that. There is – because of these few documents and not just the uniform order of support, it is clear that the parties intended to amend the original judgment for dissolution of marriage. So that original judgment is being read by the defendant to cause an automatic cessation of the right of Lorena to receive maintenance, among all the other reasons why the 2011 order should be interpreted as a modification of changes in circumstances, is the incredibly unlikely view that Lorena would have agreed to a modification of maintenance that kept in place a rule that she would automatically cease receiving maintenance if the husband did not have income from employment. That is simply an absolutely unreasonable interpretation of this order. It is clear from the record in this case that Lorena has been consistently dependent for support upon her ex-husband. And to believe that she would have entered into an agreement that kept in place a rule of automatic cessation of maintenance is simply an unreasonable and unacceptable view of the proceedings in this case. For all the reasons that have been set forth in our brief, as well as the arguments today, we request that the judgments of the trial court in this matter be reversed and our claims for alternative relief are set forth in the last portions of our brief. Thank you, counsel. I have no additional questions, but do you, Justice, have any additional questions? Thank you. Thank you, Your Honor. The Court at this time thanks both parties for your arguments this morning. This case will be taken under advisement and a disposition will be rendered in due course. Mr. Clerk, you may close the case and terminate these proceedings.